# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## COVINGTON DIVISION

| | | |
|---|---|---|
| MICHAEL STINE and ZACHERY PAINE | : | |
| individually and on behalf of other similarly | : | |
| situated individuals, | : | |
| | : | Civil Action No.: |
| Plaintiffs, | : | |
| | : | 2:18-cv-00114-DLB-CJS |
| v. | : | |
| | : | |
| FEDEX GROUND PACKAGE SYSTEM, INC., | : | |
| | : | |
| Defendant. | : | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into by and between Plaintiffs Michael Stine and Zachery Paine (the "Plaintiffs"), on behalf of themselves and the twenty-three (23) individuals that filed opt-in forms with the Court authorizing Plaintiffs to act on their behalf (Mike Arnett, Carla Baker, George Travillian, John Dent, Jay Wilson, Rafael Lezcano, Clarence Bailer, Shawn Knight, Alex Kenney, Tyler Bruns, Alexander Brennan, Makinnley Brown, Perris Hopkins, Christina Roesch, Taylor Landrum, Ashley Bloom, Andrew Witgen, Konstantin Paramonov, Timothy Grogan, Ian Penix, Thomas Doubrava, Kevin Braun, and Craig Neace; the "Opt-In Plaintiffs"), and Defendant FedEx Ground Package System, Inc. ("Defendant").

## RECITALS

WHEREAS, Plaintiffs filed suit against Defendant in the United States District Court for the Eastern District of Kentucky, Covington Division, captioned as *Michael Stine and Zachery Paine v. FedEx Ground Package System, Inc.,* Case No 2:18-cv-00114-DLB-CJS, in which Plaintiffs claimed that Defendant owed Plaintiffs overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and also asserted claims against Defendant under the wage

and hour laws of Kentucky for the alleged failure to pay Plaintiffs straight time and overtime wages for work they performed in Kentucky;

WHEREAS, on June 18, 2019, the Court conditionally certified an opt-in class consisting of "all current and former operations managers employed by FedEx Ground Package System, Inc. at its Boone County, Kentucky facility who, since July 5, 2015, were subject to a policy or practice of not being paid for work they were required to do during their lunch breaks, resulting in an underpayment of overtime pay";

WHEREAS, after Plaintiffs' Counsel disseminated the Court-approved notice and consent form to the putative class members, the Opt-In Plaintiffs filed completed consent forms with the Court, which authorized Plaintiffs to act on their behalf in this Litigation;

WHEREAS, on November 21, 2019, the Parties participated in a mediation session conducted by experienced wage and hour mediator Michael Hawkins, a Labor & Employment Partner at Dinsmore & Shohl LLP;

WHEREAS, the Parties reached a settlement at mediation on November 21, 2019, subject to Court approval, and executed a Memorandum of Essential Terms ("Term Sheet"), a copy of which is attached to this Agreement as **Exhibit A**;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between Plaintiffs, the Opt-In Plaintiffs, and Defendant, including all wage and hour claims which were or could have been asserted in the Litigation;

WHEREAS, Defendant denies all of the allegations and claims made by Plaintiffs and the Opt-In Plaintiffs in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation; and

WHEREAS, without admitting or conceding any liability or damages whatsoever,

Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

## THE CONDITIONAL NATURE OF THIS AGREEMENT

This Agreement and all associated exhibits and attachments is made for the sole purpose of settling the Litigation (as defined below) on a collective basis.  This Agreement and the Settlement it evidences are made in compromise of disputed claims.  Because the Litigation was pled and certified as a collective action, and is being settled on a collective basis, this Settlement must receive approval by the Court.  Accordingly, the Parties enter into this Agreement and the associated Settlement on a conditional basis.

In the event that the Court does not enter the Order Granting Approval of Settlement, or in the event that the associated Judgment does not become a Final Judgment for any reason, this Agreement (except for those provisions relating to the termination of the Settlement set forth in Paragraph 6, and those provisions relating to the conditional nature and confidentiality of this Settlement, non-admissibility and non-admission of wrongdoing or liability, the return of documents, and attorneys' fees and litigation costs set forth in Paragraphs 4, 6 and 7), shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever, it shall not be referred to or utilized for any purpose whatsoever, and the negotiation, terms and entry of the Agreement shall remain subject to the provisions of Federal Rule of Evidence ("Rule") 408 and any similar or analogous state laws or rules.

Defendant denies the allegations asserted in the Litigation and denies that this matter should proceed on a collective basis (other than for settlement purposes).  Defendant has agreed

to resolve the Litigation via this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, Defendant does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by Plaintiffs and the Opt-In Plaintiffs in the Litigation upon all procedural and substantive grounds, including without limitation the ability to challenge class and collective action treatment on any grounds, and to assert any and all other potential defenses or privileges.  Plaintiffs' and Plaintiffs' Counsel agree that Defendant retains and reserves these rights, and they agree not to take a position to the contrary.

## DEFENDANT'S DENIAL OF WRONGDOING OR LIABILITY

Defendant specifically and generally denies all of the claims asserted in the Litigation, denies all allegations and claims as to liability, damages, penalties, interest, fees, restitution, injunctive relief and all other forms of relief, denies any and all wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Litigation, and makes no concessions or admissions of wrongdoing or liability of any kind whatsoever.  Defendant maintains that all of its Operations Managers at its Boone County, Kentucky facility ("Ops Managers") have been properly compensated in accordance with the provisions of all state and federal laws and that, for any purpose other than settlement, the Litigation is not suitable or appropriate for class or collective action treatment pursuant to Federal Rule of Civil Procedure 23, 29 U.S.C. § 216(b), or any state analogues.

The Parties understand and agree that this Settlement represents a compromise of disputed claims, and have agreed to enter into this Agreement to avoid the risks, costs, and delays associated with further proceedings.  Nothing contained in this Agreement, nor the fact of the Settlement or this Agreement itself, nor the exhibits thereto, nor any act performed or document executed pursuant to or in furtherance of the Settlement or this Agreement may be construed or be used as an admission or evidence of the validity of any claim or allegation, or of any act, omission, liability

or wrongdoing on the part of Defendant in any action or proceeding of any kind whatsoever. Pursuant to Rule 408, and any other analogous rules of evidence that are applicable, this Agreement, and the exhibits and attachments hereto, shall be inadmissible in any proceeding, except as necessary to effectuate or enforce the Parties' Settlement.

## <u>WAGE AND HOUR CLAIMS AND SETTLEMENT BENEFITS</u>

Plaintiffs, the Opt-In Plaintiffs, and Plaintiffs' Counsel believe that the claims asserted in the Litigation have merit and that evidence developed to date supports the claims.  However, Plaintiffs' Counsel (with the assistance of Plaintiffs, who are authorized to act on behalf of the Opt-In Plaintiffs) have analyzed and evaluated the merits of the claims made against Defendant in the Litigation, conducted interviews with the Opt-In Plaintiffs, obtained and reviewed documents relating to Defendant's compensation policies, and analyzed summaries of Defendant's payroll and timecard data for Plaintiffs and the Opt-In Plaintiffs.

Based upon this work and analysis, and their careful evaluation of a number of factors, including: (i) recognizing and acknowledging the expense and length of time of the type of continued proceedings necessary to prosecute the Litigation through dispositive motions, trial and through appeals; (ii) the uncertain outcome and the risk of any litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable; (iii) the delays inherent in all litigation including that any recovery might not occur for several years; and (iv) that there was a risk this matter might later be decertified, Plaintiffs and Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Plaintiffs and the Opt-In Plaintiffs.

1. **Definitions**

As used in all parts of this Agreement, and in all related settlement documents, the following terms have the meanings specified below:

1.1     "Complaint" means the Complaint filed in this Lawsuit by Plaintiffs on July 5, 2018, which was thereafter amended by Plaintiffs on September 11, 2018.

1.2     "Court" means the United States District Court for the Eastern District of Kentucky.

1.3     "Defendant" means FedEx Ground Package System, Inc. and its successors and assigns.

1.4     "Defendant's Counsel" means Laurel Cornell, Esq. of Fisher & Phillips LLP and David Kiefer, Esq. of FedEx Ground Package System, Inc.

1.5     "Effective Date" means the date, after execution and filing of this Agreement and all related documents by all Parties and their counsel, upon which the Judgment becomes a Final Judgment.

1.6     "Final Judgment Date" means the later of the following dates upon which the judgment entered by the Court in the Litigation (the "Judgment") shall become final (the "Final Judgment"): (1) the expiration of the period for filing a notice of appeal of the Judgment; or (2) if a notice of appeal is filed, the date the appeal is dismissed or denied and the Judgment is no longer subject to appeal or other appellate review.

1.7     "Litigation" or the "Lawsuit" or the "Action" mean the lawsuit captioned as *Michael Stine and Zachery Paine v. FedEx Ground Package System, Inc.,* Case No 2:18-cv-00114-DLB-CJS, pending in the United States District Court for the Eastern District of Kentucky.

1.8     "Opt-In Plaintiffs" means the following twenty-three (23) individuals that filed opt-in forms with the Court during the notice period: Mike Arnett, Carla Baker, George Travillian,

John Dent, Jay Wilson, Rafael Lezcano, Clarence Bailer, Shawn Knight, Alex Kenney, Tyler Bruns, Alexander Brennan, Makinnley Brown, Perris Hopkins, Christina Roesch, Taylor Landrum, Ashley Bloom, Andrew Witgen, Konstantin Paramonov, Timothy Grogan, Ian Penix, Thomas Doubrava, Kevin Braun, and Craig Neace.

1.9     "Order Granting Approval of Settlement" and "Approval Order" shall mean an order to be approved and entered by the Court, which gives final approval to the Settlement and this Agreement, in a form substantially similar to the "Order of Court Granting Joint Motion to Approve Settlement Agreement and Entry of Judgment" attached hereto as **Exhibit B**.

1.10     "Parties" or "the Parties" collectively means Plaintiffs, the Opt-In Plaintiffs and Defendant.

1.11     "Plaintiffs" means Plaintiff Michael Stine and Plaintiff Zachery Paine.

1.12     "Plaintiffs' Counsel" means T. Lawrence Hicks, Esq. of Cetrulo, Mowery & Hicks, PSC.

1.13     "Releasees" means FedEx Ground Package System, Inc. and its parent companies, subsidiaries, successors in interest, and affiliated companies and individuals and entities, and their past, present and future owners, officers, employees, managers, supervisors, agents, representatives, attorneys, accountants, and insurers.

1.14     "Released Claims" means all Released Federal Law Claims and all Released State Law Claims as defined herein.

1.15     "Released Federal Law Claims" shall collectively mean any and all federal law claims, obligations, demands, actions, rights, causes of action, and liabilities against the Releasees, of whatever kind and nature, character and description, arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, whether known or unknown, and whether

anticipated or unanticipated, including Unknown Claims as defined in Paragraph 1.18, by Plaintiffs and the Opt-In Plaintiffs that accrued at any time through the Effective Date, for any type of relief, including without limitation, claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

1.16    "Released State Law Claims" shall collectively mean any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including but not limited to claims under the Kentucky Wages and Hours Act (KRS Chapter 337) and Unknown Claims as defined in Paragraph 1.18, which were or which could have been asserted by Plaintiffs and the Opt-In Plaintiffs in the Litigation arising under any applicable state and local wage and hour law, employment law or labor law that accrued at any time through the Effective Date, including without limitation, claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

1.17    "Settlement Agreement" or "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.   "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

1.18    "Unknown Claims" means any Released State Law Claims and Released Federal Law Claims which the Plaintiffs and the Opt-In Plaintiffs do not know or suspect to exist in his or her favor on or before the date of entry of the Approval Order, and which, if known by him or her might have affected his or her decision to settle with and release Defendant and the Releasees, or

might have affected his or her decision to object to this Settlement.  With respect to any and all Released State Law Claims and Released Federal Law Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiffs and the Opt-In Plaintiffs shall have expressly, knowingly, and intentionally waived for himself or herself the benefits and rights of any statute, rule, doctrine, or common law principle of any jurisdiction whatsoever that provides that a general release does not extend to unknown claims, including without limitation any applicable benefits or rights under California Civil Code § 1542, which provides:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Plaintiffs and the Opt-In Plaintiffs shall be deemed to have, and by operation of the Judgment shall have, likewise waived all such benefits and rights, including under California Civil Code § 1542.  Plaintiffs and the Opt-In Plaintiffs may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Released State Law Claims and Released Federal Law Claims, but they shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released State Law Claims and Released Federal Law Claims without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs and the Opt-In Plaintiffs acknowledge the significance and consequence of this waiver, and assume full responsibility for any loss that may be incurred by reason of such waiver.

**2.**   **<u>Background</u>**

2.1   Defendant previously employed Plaintiffs as Ops Managers.  Defendant employed Plaintiff Stine as an Ops Manager from October 16, 2016 until he resigned on February 22, 2018.

Defendant employed Plaintiff Payne as an Ops Manager from March 27, 2017 until he resigned on February 13, 2018.

2.2     Plaintiffs initiated the Lawsuit on July 5, 2018 and filed an amended five-count Complaint on September 11, 2018.   Plaintiffs' Complaint alleged violations of the FLSA (Counts I, II, and IV) and Kentucky Wages and Hours Act, KRS Chapter 337 (Counts III and V).   Plaintiffs alleged that Defendant purportedly required its Ops Managers to clock out for their 30-minute lunch breaks and perform unpaid work during those meal periods, which resulted in underpayment to Ops Managers of both straight time and overtime earnings.

2.3     On November 16, 2018, Plaintiffs filed their conditional certification motion, which Defendant opposed.   The certification motion was fully briefed as of December 28, 2018.

2.4     The Court granted Plaintiffs' conditional certification motion on June 18, 2019 and conditionally certified an opt-in class consisting of "all current and former operations managers employed by FedEx Ground Package System, Inc. at its Boone County, Kentucky facility who, since July 5, 2015, were subject to a policy or practice of not being paid for work they were required to do during their lunch breaks, resulting in an underpayment of overtime pay."

2.5     On July 9, 2019, the Court issued its approved notice and consent form and ordered that Defendant produce the class list, which Defendant did on August 8, 2019.   The class list contained the names, all known mailing addresses, and all known email addresses for the 182 potential class members.

2.6     Plaintiffs' Counsel sent the Court-approved notice and consent forms to the potential class members on August 16, 2019, with a subsequent delivery attempt made on September 6, 2019 for those mailings that were returned due to outdated addresses.

2.7     Of the 182 potential class members, 23 individuals filed opt-in forms with the Court by the end of the 45-day notice period.

2.8     Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in the Complaint, denies that it failed to properly compensate Plaintiffs and the Opt-In Plaintiffs, and further contends that, for any purpose other than this Settlement, this action is not appropriate for treatment as a collective or class action.  Defendant contends, among other things, that it has complied at all times with the FLSA and Kentucky law.

2.9     Plaintiffs and Plaintiffs' Counsel believe that they have filed a meritorious action based on alleged violations of the FLSA and Kentucky law, and that treatment of this case as a collective action is appropriate.

2.10    It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the Litigation which exist between them.

2.11    This Agreement is intended by Plaintiffs, Opt-In Plaintiffs and the Releasees to fully, finally, and forever resolve, discharge and settle the Released State Law Claims and Released Federal Law Claims which were or which could have been asserted in the Litigation upon and subject to the terms and conditions hereof.

2.12    Plaintiffs' Counsel has conducted an investigation into the facts raised by the Complaint and participated in motion practice and a mediation session with a well-respected mediator experienced in wage and hour matters.

2.13    Based on the foregoing, Plaintiffs, the Opt-In Plaintiffs and Plaintiffs' Counsel believe this Settlement with Defendant, for the consideration and on the terms set forth in this

Agreement, is fair, reasonable, and adequate and is in the best interests of the Plaintiffs and Opt-In Plaintiffs in light of all known facts and circumstances.

**3.**    **Approval Process**

3.1    This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

3.2    On or before January 6, 2020, the Parties shall file a Joint Motion to Approve Settlement Agreement ("Joint Motion").  With the Joint Motion, the Parties will also file the Settlement Agreement and a mutually agreed upon draft Approval Order.  Among other things, the Joint Motion will ask the Court to: (a) issue and enter the Approval Order approving the Settlement as fair, adequate, and reasonable, (b) incorporate the terms of this Settlement, and (c) enter judgment.

3.3    <u>Effect of Failure to Approve Settlement</u>.  In the event the Court fails to approve the Settlement and/or this Agreement, the Parties shall proceed as follows: the Parties jointly agree to (a) seek reconsideration or appellate review of the decision denying approval of the Settlement and/or Agreement, or (b) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement and/or Agreement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, the Litigation will proceed as if no settlement had been attempted.

**4.**    **Settlement Payment Terms**

4.1    <u>Settlement Payments</u>.  In consideration for dismissal of the Lawsuit with prejudice and the release and waiver provisions at Paragraph 5 below, and subject to and conditioned upon the conditions and undertakings set forth in this Agreement, Defendant agrees to pay FIFTY-

FOUR THOUSAND NINE HUNDRED AND NINETY-SEVEN DOLLARS ($54,997.00) (the "Gross Settlement Amount"), allocated as follows:

      a.     Twenty-five (25) checks in the amounts set forth in Paragraph 4.2 below totaling THIRTY-NINE THOUSAND TWO HUNDRED AND TWNETY-NINE DOLLARS ($39,229.00) (the "Wage Settlement Amount"), payable to Plaintiffs and the Opt-In Plaintiffs as wages and subject to all applicable taxes and statutory deductions, and in the amounts set forth in Paragraph 4.2 below. For purposes of Social Security (FICA) withholdings, the Parties agree that this amount shall be deemed earned in the current year they are paid. Defendant will issue a Form W-2 to Plaintiffs and the Opt-In Plaintiffs for the amounts payable as wages.

      b.     One check payable to Plaintiff Stine in the amount of TWO THOUSAND DOLLARS ($2,000.00) as an incentive payment for serving as a lead plaintiff.

      c.     One check payable to Plaintiff Payne in the amount of TWO THOUSAND DOLLARS ($2,000.00) as an incentive payment for serving as a lead plaintiff.

      d.     One check payable to Plaintiffs' Counsel in the amount of ELEVEN THOUSAND SEVEN HUNDRED SIXTY-EIGHT DOLLARS ($11,768.00), in lieu of and in full satisfaction of any and all claims Plaintiffs, the Opt-In Plaintiffs, or Plaintiffs' Counsel have, had, or may have had for attorneys' fees and costs.

      e.     For the amounts identified in subsections (b) through (d) above, Defendant will issue a 1099 form in the manner and at the time required by law.

      f.     Plaintiffs, the Opt-In Plaintiffs and Plaintiffs' Counsel agree to execute and return any tax forms necessary for payment of the above amounts and tax reporting for those amounts.

g.      The Gross Settlement Amount is inclusive of all claims for attorneys' fees, expenses, or other costs.

h.      In addition to the Gross Settlement Amount, FedEx Ground shall pay directly to the mediator Plaintiffs' share of the mediator's fee in the amount of ONE THOUSAND AND SIXTY DOLLARS ($1,060.00).

4.2    <u>Distribution of Wage Settlement Amount</u>.  The Wage Settlement Amount shall be paid to Plaintiffs and the Opt-In Plaintiffs as follows:

| *Name* | *Straight Time Wages* | *Straight Time Shifts* | *Overtime Wages* | *Overtime Shifts* | *Total* |
|---|---|---|---|---|---|
| Arnett, Mike | $ 8.40 | 1 | $ 37.28 | 4 | $ 45.68 |
| Bailer, Clarence | $ 200.03 | 35 | $ 1,920.45 | 223 | $ 2,120.48 |
| Baker, Carla | $ 480.90 | 76 | $ 2,541.00 | 219 | $ 3,021.90 |
| Bloom, Ashley | $ 209.48 | 42 | $ 1,539.83 | 209 | $ 1,749.30 |
| Braun, Kevin | $ 319.73 | 49 | $ 380.63 | 42 | $ 700.35 |
| Brennan, Alexander | $ 848.40 | 149 | $ 2,601.38 | 291 | $ 3,449.78 |
| Brown, Makinnley | $ 443.63 | 89 | $ 1,149.75 | 131 | $ 1,593.38 |
| Bruns, Tyler | $ 430.50 | 79 | $ 763.88 | 98 | $ 1,194.38 |
| Dent, John | $ 400.58 | 62 | $ 2,598.75 | 263 | $ 2,999.33 |
| Doubrava, Thomas | $ 278.25 | 56 | $ 1,875.30 | 239 | $ 2,153.55 |
| Grogan, Timothy | $ 132.83 | 22 | $ 234.15 | 28 | $ 366.98 |
| Hopkins, Perris | $ 204.75 | 30 | $ 926.63 | 84 | $ 1,131.38 |
| Kenney, Alex | $ 277.73 | 52 | $ 247.28 | 31 | $ 525.00 |
| Knight, Shawn | $ 249.90 | 45 | $ 1,457.93 | 157 | $ 1,707.83 |
| Landrum, Taylor | $ 30.98 | 5 | $ 568.05 | 56 | $ 599.03 |
| Lezcano, Rafael | $ 89.78 | 14 | $ 397.95 | 38 | $ 487.73 |

| | | | | | |
|---|---|---|---|---|---|
| Neace, Craig | $ 859.43 | 183 | $ 464.10 | 54 | $ 1,323.53 |
| Paramonov, Konstantin | $ 71.93 | 9 | $ 175.88 | 16 | $ 247.80 |
| Payne, Zach | $ 345.98 | 63 | $ 999.60 | 124 | $ 1,345.58 |
| Penix, Ian | $ 596.40 | 93 | $ 2,465.40 | 247 | $ 3,061.80 |
| Roesch, Christian | $ 176.93 | 32 | $ 782.25 | 89 | $ 959.18 |
| Stine, Michael | $ 322.88 | 42 | $ 3,148.95 | 282 | $ 3,471.83 |
| Travillian, George | $ 14.18 | 2 | $ 5.12 | 1 | $ 19.30 |
| Wilson, Jay | $ 406.35 | 72 | $ 4,460.40 | 505 | $ 4,866.75 |
| Witgen, Andrew | $ 18.90 | 4 | $ 68.25 | 7 | $ 87.15 |
| **TOTALS** | **$ 7,418.85** | **-** | **$ 31,810.19** | **-** | **$ 39,229.00** |

4.3   <u>Calculation of the Wage Settlement Amount</u>.  The shares of the Wage Settlement Amount payable to Plaintiffs and the Opt-In Plaintiffs were calculated as follows:

a.   Defendant retained a consulting expert to analyze Defendant's payroll and timecard data for the days that Plaintiffs and the Opt-In Plaintiffs worked as Ops Managers from July 5, 2018 through November 18, 2019 (the "Class Period").  This review determined that Plaintiffs and the Opt-In Plaintiffs worked at least one shift as Ops Managers during the Class Period.

b.   Using Defendant's payroll and timecard data, Defendant's consulting expert calculated the unpaid straight time and overtime earnings (using Plaintiffs' and the Opt-In Plaintiffs' actual wage rates from Defendant's data) that would have allegedly been due to Plaintiffs and the Opt-In Plaintiffs as Ops Managers had they been able to prove that they worked through all of their meal breaks without pay during the Class Period.  This amount was $74,723.00.

c.   Using Defendant's payroll and timecard data and the actual wage rates for Plaintiffs and the Opt-In Plaintiffs, the Parties at mediation calculated the amount of unpaid straight time and overtime wages that would have been allegedly been due to Plaintiffs and the Opt-In Plaintiffs

as Ops Managers had they been able to prove that they worked through seventy-five percent (75%) of their meal breaks without pay during the Class Period.  This amount was $56,042.00.

d.      To account for the risk that Defendant would file a successful decertification motion and this Litigation would not proceed to trial on a class or collective basis, the Parties at mediation applied a thirty percent (30%) discount rate to arrive at the Wage Settlement Amount ($56,042.00 x .7 = $39,229.00).  This discount rate is consistent with Sixth Circuit data from 2018, as defendants filed three decertification motions in wage and hour collective actions, with one granted.  This discount rate also accounts for the litigation risk that Defendant could succeed on the merits, whether through summary judgment or at trial.

e.      The Wage Settlement Amount was then apportioned to Plaintiffs and the Opt-In Plaintiffs consistent with shifts the individuals actually worked for Defendant as Ops Managers during the Class Period.

4.4     <u>Timing of Payment of Settlement Amount.</u>  Defendant shall pay the Settlement Amount no later than fifteen (15) calendar days after the Final Judgment Date.

4.5     <u>Tax Characterization of Payments</u>.

a.      For tax purposes, 100% of the Wage Settlement Amount shall be treated as back wages and shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS").

b.      Payments of attorneys' fees and costs shall be made without withholding, and be reported to the IRS and to each payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

c.      Incentive payments to Plaintiffs shall be made without withholding and be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

d.      Other than withholding for tax purposes, Defendant will not, unless otherwise required by law, make any deductions or withholdings from the Gross Settlement Amount, including for medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings. Entry of the Approval Order by the Court shall be deemed authority not to make any such additional deductions, withholdings or additional payments.

e.      None of the amounts paid to Plaintiffs and the Opt-In Plaintiffs shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Defendant, including for purposes of any bonus of any kind.  The amount shall also not be, or be treated as, part of any salary or wages for purposes of any bonus, benefit, wage or compensation calculation or payment.

4.6      Tax Liability.  Plaintiffs and the Opt-In Plaintiffs acknowledge and agree that Defendant has made no representations regarding the tax consequences of any amounts received pursuant to this Agreement.  Plaintiffs and the Opt-In Plaintiffs agree to pay any federal or state taxes that are required by law to be paid with respect to the payments provided for in this Agreement for any taxes owed by Plaintiffs and the Opt-In Plaintiffs.  Plaintiffs and the Opt-In Plaintiffs shall take full and complete responsibility for and hereby agrees to indemnify, defend and hold harmless Defendant from any and all tax liability that might be incurred as a result of the

receipt of any settlement monies Plaintiffs and the Opt-In Plaintiffs receive under this Agreement

for any taxes owed by Plaintiffs and the Opt-In Plaintiffs.

5.    **Released Claims**.

5.1    In consideration for receiving a settlement check from Defendant, whether it is

cashed or not, Plaintiffs and the Opt-In Plaintiffs forever and fully release Defendant from all

Released Claims.

6.    **Voiding The Agreement**

6.1    If the Court rejects the Settlement and/or this Agreement, fails to approve and enter

the Approval Order in substantially the form submitted by the Parties, or fails to enter a Final

Judgment, unless the Parties agree in writing, this Agreement shall be void *ab initio* except as to

the provisions expressly stated in this Agreement to survive, and Defendant shall have no

obligations to make any payments under the Settlement or this Agreement.

6.2    A decision of the Court declining to approve any material condition of this

Agreement which effects a fundamental change of the Parties' agreement shall render the entire

Settlement voidable and unenforceable as to all Parties herein at the option of either Party, except

as to the provisions expressly stated in this Agreement to survive.  Each Party may exercise its

option to void this Settlement by giving notice, in writing, to the other and to the Court within

fifteen (15) days of the Court's disapproval of any material condition, but in no event at any time

after the Effective Date.

6.3    Unless the Parties agree in writing otherwise, in the event that the Agreement is not

approved by the Court or the Settlement set forth in the Settlement Agreement is terminated,

cancelled, declared void or fails to become effective in accordance with its terms, or if there is no

Approval Order, the Parties shall resume the Litigation at that time as if no Agreement had been

entered.  In such event, the terms and provisions of the Agreement, and the approval of any settlement class for purposes of implementing this Settlement, shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Agreement (including without limitation any order certifying the case or any part of the case as a class or collective action for settlement purposes) shall be treated as vacated, *nunc pro tunc.*

**7.**   **Confidentiality, Non-Disparagement and Non-Publication of Settlement**

7.1   The Parties and their respective counsel agree that they will not issue any press release, and will not hold or participate in any press conference regarding the Settlement, this Agreement or any other matter related to the Litigation.

7.2   Plaintiffs and the Opt-In Plaintiffs agree that they shall not make any false or defamatory remarks or comments regarding Defendant or any present, former or future director, office, employee or agent of Defendant.

7.3   With respect to all of the documents produced by Defendant in this litigation (including those shared prior to and during mediation), Plaintiffs' Counsel acknowledges that he continues to be bound by the Parties' agreement that these documents must be kept confidential and may only be used to settle this Action.  Plaintiffs' Counsel agrees to return or destroy the documents within sixty (60) days after the Effective Date.

7.4   The Parties agree that, other than filing this Agreement with the Court, or as otherwise provided herein or required by law, they shall keep strictly confidential and will not disclose the terms of the Settlement and this Agreement.  If asked about the case, the Parties and/or their counsel will merely say that the case has been amicably resolved, and refer any interested parties to the public filings.  Defendant, Plaintiffs, the Opt-In Plaintiffs and Plaintiffs' Counsel

further agree that they will not publicize or disclose the terms of the Settlement and this Agreement, the negotiations with respect thereto, or any other matters relating to the Litigation, either directly or indirectly, that is, through agents, attorneys, or accountants, or any other person or entity, either in specific or as to general content, to the media, the public generally, or any individual or entity. This paragraph does not prohibit Defendant and/or Defendant's Counsel from disclosing information concerning this Agreement to their employees and agents to the extent necessary to effectuate the terms of this Agreement or who otherwise have a business need to know the terms. Defendant, Plaintiffs, the Opt-In Plaintiffs, and Plaintiffs' Counsel may also disclose information concerning this Agreement to their respective counsel, tax advisors, insurance regulators and external auditors who have first agreed to keep said information confidential and to not disclose it to others. The foregoing shall not prohibit or restrict such disclosure as is required by law or as may be necessary for the prosecution of claims relating to the performance or enforcement of this Agreement, or prohibit or restrict Defendant, Plaintiffs, the Opt-In Plaintiffs, and Plaintiffs' Counsel from responding to any inquiry about this settlement or its underlying facts and circumstances by any governmental agency, or any regulatory or self-regulatory agency or organization. To the extent permitted by law, with respect to any such disclosure pursuant to the foregoing sentence, Defendant, Plaintiffs, the Opt-In Plaintiffs, and Plaintiffs' Counsel shall provide the other Party with as much notice as possible of any request to make any above-described disclosure, and will use best efforts to ensure that if such disclosure occurs it will occur in a manner designed to maintain the confidentiality of this Agreement to the fullest extent possible.

8.      **Parties' Authority**

The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

9.     **Mutual Cooperation**

9.1     The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  On or before January 6, 2020, the Parties shall take all necessary steps to secure the Court's approval of this Agreement.

10.    **Notices**

Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

   **To Plaintiffs and the Opt-In Plaintiffs**:

   T. Lawrence Hicks, Esq.
   CETRULO, MOWERY & HICKS, PSC
   130 Dudley Road, Suite 200
   Edgewood, Kentucky 41017
   Tel: (859) 331-4900
   Fax: (859) 426-3532
   Email: *lhicks@cetrulolaw.com*

**To the Defendant:**

David J. Kiefer, Esq.
FedEx Ground Package System, Inc.
1000 FedEx Drive
Moon Township, PA 15108
Tel: (412) 859-4140
Fax: (412) 859-5150
Email: *david.kiefer@fedex.com*

## 11.    **Interpretation and Enforcement/Miscellaneous Terms**

11.1    <u>No Other Actions</u>.  Plaintiffs and the Opt-In Plaintiffs represent and warrant that, other than the Lawsuit, there are no other actions at law or administrative proceedings filed or initiated by Plaintiffs or the Opt-In Plaintiffs (or their behalf) against Defendant that are currently pending.

11.2    <u>Further Acts</u>.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

11.3    <u>No Assignment</u>.  Plaintiffs' Counsel, Plaintiffs, and the Opt-In Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

11.4    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

11.5    Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Opt-In Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

11.6    Arms' Length Transaction; Materiality of Terms.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

11.7    Captions.   The captions or headings of the Paragraphs and sections of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

11.8    Construction.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

11.9    Blue Penciling/Severability.  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

11.10    Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Commonwealth of Kentucky, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

11.11    Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to,

the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

      11.12   <u>Waivers, etc. to Be in Writing</u>.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

      11.13   <u>Counterparts</u>.   The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

      11.14   <u>Facsimile and Email Signatures</u>.  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

## 12.   <u>Understanding of the Agreement</u>

      Plaintiffs have read this entire Agreement carefully and fully understand the final and binding effect of this Agreement, including its binding nature on the Opt-In Plaintiffs.  Plaintiffs

agree that this Agreement is written in a manner calculated to be understood by them and that if they do not understand any part of this Agreement, Plaintiffs understand that they have had the opportunity to have it explained to them by an attorney of their choosing.  The only promises or representations made to Plaintiffs and the Opt-In Plaintiffs about this agreement, or to induce them to sign this agreement, are contained in this agreement.  Plaintiffs agree that they were not pressured or coerced in any way to sign this Agreement.  Plaintiffs are signing this agreement on behalf of themselves and the Opt-In Plaintiffs knowingly and voluntarily and, after due consideration, have entered into this Agreement and release intending to waive, settle, and release all claims they have or may have had against Defendant regardless of the discovery of new facts.

*[Signature page to follow]*

**WE AGREE TO THESE TERMS,**

DATED: _____, 2020   **FEDEX GROUND PACKAGE SYSTEM, INC.**

           Printed Name: _____

           Title: _____

           Signature: _____


DATED: _____, 2020   **MICHAEL STINE, Individually and on behalf of all Opt-In Plaintiffs**

           Printed Name: _____

           Signature: _____


DATED: _____, 2020   **ZACHERY PAINE, Individually and on behalf of all Opt-In Plaintiffs**

           Printed Name: _____

           Signature: _____

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| MICHAEL STINE | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| ZACH PAYNE | ) | Case No. 2:18-cv-00114-DLB-CJS |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEDEX GROUND PACKAGE SYSTEM, | ) | |
| INC. | ) | |
| | ) | |
| DEFENDANT. | ) | |

## Memorandum of Essential Terms ("Memo")

The parties to the above-captioned matter participated in a mediation on November 21, 2019.

The parties have agreed to fully and finally resolve all claims Plaintiffs, Michael Stine and Zach Payne and all of the Opt-In Plaintiffs (collectively, "Plaintiffs") may have against Defendant, FedEx Ground Package System, Inc. and its parent companies, subsidiaries, successors in interest, and affiliated companies and individuals and entities, and their past, present and future owners, officers, employees, managers, supervisors, agents, representatives, attorneys, accountants, and insurers (collectively, "Defendant"), whether those claims are asserted in the above-captioned matter or otherwise, as follows:

1.      The parties will enter into a long form Stipulation of Settlement, which is consistent with this Memo.

2.      Plaintiffs shall prepare a motion for approval of settlement to be filed with the court. Ten (10) days prior to filing of the same, Defendant shall be provided a draft to review.

3.      Within thirty (30) days of court approval of the settlement, Defendant will make the following payments:

        a.   Thirty-nine thousand, two hundred and twenty nine dollars ($39,229.00) to be split among the Plaintiffs, less standard deductions, for which an IRS Form W-2 shall issue;

b. Two thousand dollars ($2,000.00) incentive payment for Plaintiff Michael Stine's service as the collective representative, for which an IRS Form 1099 will issue;

c. Two thousand ($2,000.00) incentive payment for Plaintiff Zach Payne's service as a collective action representative, for which an IRS Form 1099 will issue;

d. Eleven thousand, seven hundred and sixty-eight dollars ($11,768.00) to be paid to T. Lawrence Hicks, Esq. in attorney fees, for which an IRS Form 1099 will issue.

4.      Defendant also agrees to pay any outstanding mediator fees.

5.      Within thirty (30) days of execution of this Memo, Plaintiffs' counsel shall provide Defendant with the schedule of payments to be made pursuant to subparagraph 3(a) above.

6.      The parties agree that Plaintiffs release all causes of action and factual or legal theories/allegations that were alleged, or reasonably could have been alleged, based on the operative complaint in the above-captioned matter, including but not limited to all of the following claims for relief:  (a) failure to provide proper meal periods; (b) failure to authorize and permit rest breaks; (c) failure to pay all straight-time wages and overtime wages due; (d) improper and/or inaccurate wage statements; (e) unfair business practices; and (f) any other claims or penalties under the wage and hour laws pleaded in the above-captioned matter, or that reasonably could have been pleaded in the above-captioned matter, based on the facts or legal theories described therein; and (g) all damages, penalties, interest and other amounts recoverable under said causes of action under Kentucky and federal law. The period of the release shall extend to the date that the court enters the order granting final approval of the settlement.

7.      Defendant expressly denies any liability.  Neither this Memo nor the "long-form" Stipulation of Settlement shall constitute an admission of liability or the accuracy of any allegation made by Plaintiffs or their counsel.

8.      Plaintiffs shall not make any false or defamatory remarks or comments regarding FedEx Ground or any present, former or future director, officer, employee or agent of FedEx Ground.

9.      Within three (3) days of the complete execution of this Memo, the Parties will submit to the court a Stipulation to Vacate all case dates and deadlines.  This Memo is contingent on the court entering an Order regarding Stipulation to Vacate all pre-trial dates and deadlines.

IT IS SO AGREED.

**PLANTIFF**

Dated: November 21, 2019

Michael Stine

Dated: November 21, 2019

T. Lawrence Hicks
*Attorney for Plaintiff*

**DEFENDANT**

Dated: November 21, 2019

Melissa McCoy Gormly, Senior Counsel,
Litigation
*For FedEx Ground Package System, Inc.*

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

| | | |
|---|---|---|
| MICHAEL STINE and ZACHERY PAINE individually and on behalf of other similarly situated individuals, | : : : | Civil Action No.: |
| | : | 2:18-cv-00114-DLB-CJS |
| Plaintiffs, | : : | Honorable David L. Bunning |
| v. | : : | |
| FEDEX GROUND PACKAGE SYSTEM, INC., | : : | |
| Defendant. | : | |

**[PROPOSED] ORDER OF COURT GRANTING JOINT MOTION TO APPROVE**
**SETTLEMENT AGREEMENT AND ENTRY OF JUDGMENT**

Having considered the Parties' Joint Motion to Approve Settlement Agreement, the exhibits thereto, and the complete record in this matter, for the reasons set forth below and for good cause shown, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. The Court **GRANTS** the Joint Motion to Approve Settlement Agreement.

2. The Court **APPROVES** the Settlement Agreement and Release ("Settlement Agreement") and finds that the Settlement Agreement is a fair, reasonable, and adequate settlement of a bona fide dispute over the FLSA's provisions.

3. The Court **APPROVES** the incentive payments to Plaintiffs Michael Stine and Zachery Paine.

4. The Court **APPROVES** the payment of attorneys' fees and costs, which provides for fair and reasonable attorneys' fees and costs incurred in the prosecution of this action.

5. This case, and all claims asserted in this litigation, are hereby **DISMISSED WITH PREJUDICE**.

6. The Court retains jurisdiction to enforce the terms of the Settlement Agreement.

7.      Judgment is hereby entered.

**IT IS SO ORDERED.**

Dated: _____

_____
The Honorable David L. Bunning
District Judge, United States District Court,
Eastern District of Kentucky